**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**DAVID J. STONE** | Case No. 1:26-CR-166 |

# GOVERNMENT'S SENTENCING MEMORANDUM

The IRS spent decades attempting to collect hundreds of thousands of dollars of unpaid taxes from David Stone. What began as a civil collection effort transitioned into a criminal case as the years dragged on and Stone continued sabotaging the IRS. The involvement of federal prosecutors didn't dissuade Stone from his obstructive conduct—to the contrary, Stone boldly produced a fabricated document in response to a federal grand jury subpoena. Based on Stone's demonstrated recalcitrance, the United States requests the Court impose a sentence of 30 months, the high end of the Guidelines range. Such a sentence will be sufficient, but not greater than necessary, to capture the scope of Stone's conduct and deter others from engaging in similar obstructive activity.

## I. PROCEDURAL HISTORY

On April 21, 2026, Stone pleaded guilty by information to one count of corruptly endeavoring to obstruct and impede the administration of the internal revenue laws, in violation of 18 U.S.C. § 7212(a), before U.S. Magistrate Judge Susan Hightower.[1] On May 1, 2026,

[1] ECF No. 8.

Stone's guilty plea was accepted by U.S. District Judge Robert Pitman.[2] The sentencing hearing is presently set for October 9, 2026.[3]

## II. FACTUAL BACKGROUND

Stone owned and operated Engineered Metals Company ("EMCO"), a construction business with around 20 employees. From the beginning of 2004 through the end of 2005, Stone withheld trust fund taxes from employees' wages, then failed to fully remit those taxes to the IRS.[4] In 2005, the IRS began pursuing levies and liens and assessing penalties against Stone. In 2016, over ten years later, the U.S. District Court for the Western District of Texas reduced Stone's unpaid federal tax liabilities to judgment and foreclosed upon one of Stone's properties after the United States filed a civil complaint. Up until 2021, civil IRS agents persisted in their collection efforts and sent myriad letters and notices to Stone about the judgment that had been entered against him and his ongoing obligation to pay his outstanding tax liabilities.

Despite earning income from 2013 through 2024, Stone did not file individual income tax returns. Instead, he structured his financial affairs so that his personal expenses were paid directly out of EMCO's business accounts. In this way, he concealed the receipt of income from the IRS, preventing the IRS from collecting unpaid employment taxes or assessing individual income taxes.

To aid in the charade, Stone cooked the books. When he withdrew EMCO's money for his own personal use, he labeled the withdrawals as shareholder receivables, i.e., loans to

---

[2] ECF No. 15.
[3] ECF No. 16.
[4] Social Security, Medicare, and federal income taxes withheld from employees' wages are referred to as "trust fund taxes" because employers hold the withheld amounts in trust until they are paid over to the IRS. Collectively, trust fund taxes and the matching amounts of Social Security and Medicare taxes contributed by employers are referred to as "employment taxes." Employers are required to pay over employment taxes on a quarterly basis.

himself. Below is an example of the type of entry with which Stone peppered EMCO's general ledgers:

*"David Stone - Shareholder Receivable" Entry (2019 General Ledger)*

| Date | Reference | Jrnl | Trans Description | Debit Amt | Credit Amt |
|---|---|---|---|---|---|
| 1/12/19 | LLC 01-12 | CDJ | David Stone - Shareholder Receivable | 22,473.00 | |

The accounting records do not reflect any significant efforts by Stone to repay the money EMCO ostensibly lent him. In other words, for years, EMCO paid thousands of dollars of Stone's personal expenses, which he did not report as income on his tax returns, and which he has not paid back to the company. The total intended tax loss resulting from Stone's obstruction of the IRS's collection efforts, including interest and penalties, exceeds $1,384,766.

IRS Criminal Investigation eventually took over the case. In November 2024, a federal grand jury subpoenaed EMCO's business records. In January 2025, Kevin Plannegar, Stone's defense attorney at the time, produced EMCO's response over email. The records produced included EMCO's general ledgers and balance sheets from 2013 through 2024, which is how prosecutors first discovered Stone accounted for payments to himself as shareholder receivables.

The government reached out to Stone's attorney on March 19, 2025, to confirm the existence or nonexistence of any loan agreements or notes between EMCO and its principals, owners, or employees. When Stone learned prosecutors were interested in the loans referenced in EMCO's general ledgers, he gave his attorney a fabricated loan agreement to substantiate the sham transactions. LawDepot is an online company that enables users to self-generate legal documents. Records provided by LawDepot indicate that approximately one week after prosecutors requested Stone produce any loan documents that would substantiate the general

ledger entries, Stone purchased a monthly subscription to LawDepot and accessed the product "Loan Agreement" that same day.[5]

A footer on the document provided to the government reads "©2002-2025 LawDepot.com."[6] Yet in four places, Stone handwrote that the loan agreement had been signed and dated over nine years prior on January 1, 2016 (New Year's Day). Stone signed the loan in ink as both lender and borrower. According to the three-page backdated document, EMCO supposedly lent Stone up to $1 million on a revolving basis, with no fixed repayment date and a de minimis annual interest rate of 3%.

*Backdated Loan Agreement*



**SIGNED, SEALED, AND DELIVERED**
this 1 day of Jan 2016,
________.

David Stone

©2002-2025 LawDepot.com®

Page 3 of 3

III. SENTENCING GUIDELINES

In formulating a sentence, the Court must begin with the U.S. Sentencing Guidelines. Although the Guidelines are no longer binding, the Supreme Court has directed that "[a]s a

---

[5] *See* Ex. 1.
[6] *See* Ex. 2.

matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for sentencing.[7]

The U.S. Probation Office calculates Stone's offense level as follows:[8]

| Offense Level | | |
|---|---|---|
| **Description** | **USSG Section** | **Level** |
| Base Offense Level (referencing 2T4.1)<br>Tax Table (tax loss greater than $550,000 but less than $1,500,000) | 2T1.1<br>2T4.1(H) | 20 |
| Defendant willfully attempted to obstruct or impede administration of justice w/ respect to investigation | 3C1.1 | +2 |
| Zero-Point Offender | 4C1.1 | -2 |
| Acceptance of Responsibility | 3E1.1 | -3 |
| Total: | | 17 |

The government concurs with the Probation Office's offense level calculation. An offense level of 17 and a Criminal History Category of I yields a Guidelines range of 24 to 30 months.

Probation properly applied the obstruction adjustment pursuant to § 3C1.1. When Stone falsified a loan document and turned it over to prosecutors in response to a federal grand jury subpoena, he willfully attempted to obstruct and impede the administration of justice with respect to the investigation of the instant offense of conviction. His intent was to substantiate the accounting records falsely reporting that EMCO regularly issued him loans. In turn, the falsified accounting records were intended to conceal his receipt of income from the IRS, thus obstructing the IRS's efforts to collect the taxes owed. This is a textbook example of "producing or

[7] *Gall v. United States*, 552 U.S. 38, 49 (2007).
[8] Presentence Report ("PSR").

attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding."[9]

## IV. SECTION 3553(a) ANALYSIS

In addition to determining the Guidelines range, the Court must also weigh the sentencing factors set forth in 18 U.S.C. § 3553(a) and impose a sentence that is sufficient, but not greater than necessary, to address the factors set forth in that statute. These factors include: (1) the nature and circumstances of the offense and the history and the characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (3) the need to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (5) the Guidelines and policy statements issued by the U.S. Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities amongst defendants with similar records who have been found guilty of similar crimes; and (7) the need to provide restitution to any victim of the offense.[10]

### A. Nature and Circumstances of the Offense

Stone's sentence should account for the longevity and severity of Stone's conduct. The unpaid taxes at issue were trust fund taxes, so called because Stone withheld those taxes from his employees' wages and held them in trust for the United States. Stone misappropriated federal income, Social Security, and Medicare taxes that were supposed to go toward funding important retirement, disability, and health insurance benefits. Instead, he kept the funds for himself and his

---

[9] U.S. SENT'G GUIDELINES MANUAL § 3C1.1 cmt. n.4(C) (U.S. SENT'G COMM'N 2025).
[10] 18 U.S.C. § 3553(a).

business, causing a loss to the United States of over $1.3 million. Since 2004, the U.S. government has expended significant resources attempting to bring Stone in line with the law. In the meantime, Stone didn't file business tax returns, didn't file personal tax returns, and only made a voluntary $350,000 payment toward his unpaid taxes once he was facing a sentencing date. Knowingly handing a fake document to federal prosecutors was not a step to be taken lightly, either. The federal government is not a minor inconvenience to be brushed aside, and the sentence should reflect that.

B. History and Characteristics of the Defendant

Stone is a well-educated businessman who gambled that he could outwit and outlast the federal government. He graduated from Dartmouth College, earning degrees in economics and organic chemistry.[11] For most of his life, he ran his own business, and he enjoyed ownership of multiple vehicles and multiple properties across the United States.[12] He had an enviable upbringing, all of which he disregarded when he chose to act as though he was above the law.

Stone is older and lacks a criminal history, but that is the norm in a tax case. In fiscal year 2025, the average age of a defendant in a tax fraud case was 53 years, and 86% of defendants had little or no prior criminal history.[13] The Guidelines range accounts for his lack of a criminal history through his criminal history category and the applicability of the zero-point offender adjustment.

---

[11] PSR at ¶ 52.
[12] PSR at ¶¶ 53, 55, 60.
[13] U.S. SENT'G COMM'N, QUICKFACTS: TAX FRAUD (2026), https://www.ussc.gov/sites/-default/files/pdf/research-and-publications/quick-facts/Tax_Fraud_FY25.pdf.

C. Need to Reflect Seriousness of Offense, Promote Respect for Law, and Provide Just Punishment

Tax fraud harms every law-abiding, taxpaying citizen. According to the U.S. Sentencing Commission, the median tax loss for tax fraud offenses in fiscal year 2025 was $546,562.[14] Stone is responsible for an intended tax loss of over $1.3 million. His willingness to abuse the tax laws for his own personal gain calls for a sentence that will instill within him a greater respect for the law.

D. Need for Deterrence

General deterrence—"the effort to discourage similar wrongdoing by others through a reminder that the law's warnings are real and that the grim consequence of imprisonment is likely to follow"[15]— is of paramount importance in a tax case. The U.S. tax system depends on taxpayers voluntarily complying with the law. Employment taxes represented over a third of the taxes collected by the IRS for tax year 2025, with the IRS receiving over 34 million employment tax returns.[16] The IRS's most recent study of tax compliance estimates a yearly tax gap of over $600 billion in unreported and uncollected taxes.[17] Due to the sheer numbers involved, only a small percentage of cases are pursued criminally.[18] Consequently, to preserve the integrity of the nation's self-reporting tax system, the relatively few criminals caught undermining and exploiting the system must be punished to deter those tempted to do the same. The government cannot ensure compliance with the Internal Revenue Code if the

---

[14] *Id.*
[15] *United States v. Bergman*, 416 F. Supp. 496, 499 (S.D.N.Y. 1976).
[16] INTERNAL REVENUE SERVICE, DATA BOOK (2026), https://www.irs.gov/pub/irs-pdf/p55b.pdf.
[17] INTERNAL REVENUE SERVICE, IRS: THE TAX GAP (2026), https://www.irs.gov/statistics/irs-the-tax-gap.
[18] INTERNAL REVENUE SERVICE, *supra* note 16 (noting that in fiscal year 2025, the government completed only 2,850 criminal investigations).

general public believes there are no meaningful repercussions for failing to comply with tax laws and regulations.

The U.S. Sentencing Commission and the Courts have emphasized the importance of deterrence in a tax case. In the introduction to the section of the Guidelines Manual addressing tax offenses, the Sentencing Commission states "[b]ecause of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration" in sentencing.[19] As the Fourth Circuit phrased it in *United States v. Engle*:[20]

> Given the nature and number of tax evasion offenses as compared to the relatively infrequent prosecution of those offenses, we believe that the Commission's focus on incarceration as a means of third-party deterrence is wise. The vast majority of such crimes go unpunished, if not undetected. Without a real possibility of imprisonment, there would be little incentive for a wavering would-be evader to choose the straight-and-narrow over the wayward path.

Indeed, "[s]tudies have shown that salient examples of tax-enforcement actions against specific taxpayers, especially those that involve criminal sanctions, have a significant and positive deterrent effect."[21]

Employment taxes are a particularly tempting source of funds for business owners such as Stone. When employers make the decision to commit tax fraud, they tilt the playing field in their favor, thereby harming the many diligent businesses who faithfully comply with their tax obligations. It is critical for the sentence to show that there are real and significant consequences to giving into this temptation.

---

[19] U.S. SENT'G GUIDELINES MANUAL § 2T introductory cmt. (U.S. SENT'G COMM'N 2025).
[20] 592 F.3d 495, 502 (4th Cir. 2010).
[21] Joshua D. Blank, *In Defense of Individual Tax Privacy*, 61 EMORY L.J. 265, 321 (2011).

Individual deterrence is also needed. Quarter after quarter, year after year, Stone chose not to pay over trust fund taxes or file individual income tax returns. To date, Stone *still* hasn't filed his individual income tax returns.[22] Absent a meaningful term of imprisonment, Stone will be tempted to slip back into his old ways.

E. Need to Avoid Unwarranted Sentencing Disparities

Based on available data from the U.S. Sentencing Commission, the median sentence length for a tax offense in the Western District of Texas is 21 months.[23] The intended tax loss attributable to Stone is two-and-a-half times the median intended tax loss amount for fiscal year 2025.[24] A sentence of 30 months ensures Stone receives a sentence that is comparable with the type of sentence his peers are receiving.

## V. RESTITUTION

As part of the plea agreement, Stone agreed to make full restitution to the IRS pursuant to 18 U.S.C. § 3663(a)(3).[25] Specifically, Stone agreed to pay $1,384,766, which reflected the sum of the Trust Fund Recovery Penalties ("TFRPs") assessed against him by the IRS.[26] The defendant agreed to pay interest on the restitution amount, with interest running from the last date prescribed for payment of the relevant tax through the date of sentencing.[27] The IRS has updated its interest calculations and taken into account payments Stone has made toward his

---

[22] PSR at ⁋ 54.
[23] Interactive Data Analyzer: Sentencing Outcomes (Sentence Length), U.S. Sent'g Comm'n (Sept. 24, 2026, at 2:30 ET), https://ida.ussc.gov/analytics/saw.dll?Dashboard. The U.S. Sentencing Commission presents data from fiscal years 2015 through 2025.
[24] *See* INTERNAL REVENUE SERVICE, *supra* note 13.
[25] ECF No. 3 at 4.
[26] A TFRP is equal to the full amount of the unpaid trust fund taxes plus interest.
[27] ECF No. 3 at 5.

outstanding tax liabilities. As of September 21, 2026, there is an outstanding balance of $1,241,926 owed to the IRS.

| Quarter | TFRP Balance | Payment | TFRP Balance as of 09/21/2026 |
|---|---|---|---|
| 03/31/2004 | $175,091.11 | $206,972.12 | $0.00 |
| 06/30/2004 | $207,761.05 | $151,491.77 | $85,835.02 |
| 09/30/2004 | $214,987.27 | -- | $258,847.29 |
| 03/31/2005 | $283,326.66 | -- | $341,128.75 |
| 06/30/2005 | $188,435.21 | -- | $216,814.80 |
| 09/30/2005 | $173,372.44 | -- | $208,742.52 |
| 12/31/2005 | $141,792.38 | -- | $130,558.01 |
| Total | $1,384,766.12 | $358,463.89 | $1,241,926.39 |

Stone argues he should receive a non-incarceration sentence so he can continue working and pay restitution.[28] He claims "no one is prepared to assume [his] role" at EMCO and "no successor has been trained."[29] This lack of succession planning seems intentional, considering Stone pleaded guilty almost half a year ago and is already past the age of retirement. More importantly, a defendant's ability to pay restitution is far from the sole consideration at sentencing. To weigh that factor improperly risks creating a system that privileges the wealthy over the poor. *See United States v. Sample*, 901 F.3d 1196, 1199-1200 (10th Cir. 2018). The seriousness of Stone's offense demands a term of incarceration in addition to the payment of restitution. Every two weeks, employers across the country withhold hundreds of millions of dollars from their employees' pay. If the perception is that the consequences for using those

[28] ECF No. 17 at 3-8.
[29] *Id.* at 7.

funds for other purposes is merely a restitution order, then individuals in Stone's position will choose to enrich themselves with money meant for important federal programs.

## VI. CONCLUSION

To demonstrate to other business owners in Texas that crime does not pay, and to vindicate the millions of taxpayers who comply with the nation's tax laws and take the IRS and the Department of Justice seriously, the government requests the Court impose a sentence of 30 months imprisonment.

Respectfully submitted,

COLIN M. MCDONALD
Assistant Attorney General
National Fraud Enforcement Division

By: *s/ Caroline E. Pearson*
Caroline E. Pearson (MD 2211290116)
Trial Attorney
Tax Section
950 Pennsylvania Avenue NW
Washington, DC 20530
202-892-0239
Caroline.Pearson@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

By: _*/s/ Caroline E. Pearson*_________
Caroline E. Pearson
Trial Attorney, Tax Section
National Fraud Enforcement Division
U.S. Department of Justice